**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 30, 2026

**VIA ECF**
The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Jonathan Spalletta, 26 Cr. 118 (JSR)**

Dear Judge Rakoff:

The Government respectfully submits this letter in opposition to the defendant's motion for certain relief regarding the testimony of Jason Rodgers, Dkt. 41. The defendant requests that the Court (i) strike Mr. Rodgers's testimony regarding the size of his investment in Uranium, his motivations for that investment, and his reaction to his losses; (ii) issue a curative instruction; and (iii) preclude the Government from eliciting further similar evidence. The defendant's motion should be denied in its entirety.

As a preliminary matter, the motion is untimely. Federal Rule of Evidence 103(a) provides that a party seeking to strike evidence must "timely object[] or move to strike" and "state the specific ground." Fed. R. Evid. 103(a). This rule is applied "strictly." *United States v. Williams*, 930 F.3d 44, 64 (2d Cir. 2019) "To be timely, an objection must be made as soon as the ground of it is known, or reasonably should have been known to the objector." *United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1991). As the defendant acknowledges, he did not object to the testimony either at the time it was offered (on the first day of Mr. Rodgers's testimony); after the Court inquired of the Government as to the relevance of this testimony following the first day of Mr. Rodgers's testimony, *see* Tr. 92-93, *see also id.* at 117 (THE COURT: "There has been no global objection of that sort by the defense and, therefore, I've allowed his testimony to go forward."); or even after Mr. Rodgers's testimony concluded. There is good reason for this rule: acting on such a delayed objection deprives the Government of a fair opportunity to meet the objection in the moment and adapt its presentation of the evidence to address any concerns, among other things. The belated nature of the defendant's motion—which has now been made almost three full witnesses later, well after any potential basis for the objection was known to him—is alone grounds to deny the motion.

On the merits, the defendant's motion also fails.

*First*, there was no error in the presentation of the admitted testimony to the jury, including the testimony the defendant now challenges. The Court carefully policed the boundaries of Mr. Rodgers's testimony given the strategic choices made by the defendant, and the aspects of Mr.

Rodgers's testimony that were admitted were properly received. *See, e.g.*, Tr. 58-59 (THE COURT: "But I'm not going to raise an objection if counsel doesn't. So, there was no objection to any of the prior questions, so those will all be part of the record."). The Government expects that during its final instructions, the Court will instruct the jury that it must only consider evidence that was admitted, as the Court has already done, and the jury is capable of following that instruction.

*Second*, evidence of losses by liquidity providers like Mr. Rodgers is relevant to multiple issues in this case, including (i) damage to the Uranium system (i.e., the draining of funds from the Uranium liquidity pools); (ii) economic loss under Section 1030(e)(11), which includes not only costs of restoring affected computer systems, but "any reasonable cost to any victim"; and (iii) wire fraud, the charged specified unlawful activity for the money laundering count. *See* Tr. 92-93, 117-121. With respect to wire fraud (one of the alleged specified unlawful activities of Count Two), establishing that the defendant sought to obtain money or property— and that the cryptocurrency of Uranium liquidity providers, like Mr. Rodgers, was clearly meaningful money or property to them—is clearly relevant to proving the elements of the defendant's fraud. *See Ciminelli v. United States*, 598 U.S. 306, 316 (2023) ("[T]he wire fraud statute reaches only traditional property interests"). The jury is therefore entitled to learn, and the Government must be permitted to prove, that victims deposited money into Uranium, and as a result of the defendant's acts, their money was lost.

Notably, the defendant does not cite any case law to support his claim that losses to a wire fraud victim should be precluded under Rule 403. In fact, courts have repeatedly held that such losses are relevant and admissible. *United States v. Heimann*, 705 F.2d 662, 669 (2d Cir. 1983) ("[W]hen the contested issue is intent, whether or not victims lost money can be a substantial factor in a jury's determination of guilt or innocence."); *United States v. Brocksmith*, 991 F.2d 1363, 1368 n.7 (7th Cir. 1993) ("The amount of loss sustained by a victim is relevant and admissible evidence in a mail fraud prosecution."); *United States v. Elliott*, 771 F.2d 1046, 1051 (7th Cir. 1985) ("[I]f there are actual losses, they may be proved. We know of no authority for the contrary proposition, and defendant does not cite any."); *United States v. Forbes*, 2006 WL 2792883, at *5 (D. Conn. 2006) (noting that evidence of victim loss is "highly probative and relevant to the issue of materiality"). Nor does the defendant cite any authority to preclude such evidence of losses in the context of a Section 1030 violation.

Nonetheless, in light of the concerns raised by the Court, the Government has already adjusted its presentation of evidence accordingly by significantly limiting the testimony it elicited from Moz Mirbaba and streamlining its presentation of the case. *See, e.g.* Tr. 128-129 ("In light of the Courts concerns we have substantially shortened [Mirbaba's] anticipated testimony"); Tr. 163-171 (Mirbaba testimony). The defendant's request that the Government be directed not to elicit further evidence regarding the size of victim losses is thus not necessary.[1]

[1] If needed, the Government will forgo questioning the only remaining victim it intends to call, who is relevant to venue, about the amount of their loss.

*Third*, the defendant's strategic choice to cross-examine Mr. Rodgers regarding the value of his lost Uranium investment further warrants denial of the requested relief. The defendant not only chose not to object to the testimony he now challenges, but he also elicited the amount of Mr. Rodgers's total loss at least a half-dozen times. *See* Tr. 98 (MR. BELL: "And what was the alleged loss or the loss you sustained? A. My calculations are at $2.7 million."); Tr. 99 (MR. BELL: "And how much was the amount that you put in your basis? A. I believe it was -- my initial was about $2.3 million."); Tr. 101 (MR. BELL: "Q. And what was the trading volume of Uranium in or around April of 2021 such that you moved approximately $2.3 million into it? A. I don't know."); Tr. 102 (MR. BELL: "Q. And did you peruse the Uranium website prior to parking the $2.3 million there, your basis? A. I did."); Tr. 105 (MR. BELL: "[Y]ou put money in in April of '21, approximately $2.3 million, early for April of 2021, and then it's gone in or around 4/28 of '21; is that right, give or take? A. Unfortunately, yes."); Tr. 113 (MR. BELL: "[J]ust so I understand, you put in approximately 2.3 million prior to the first incident. That's what the judge just asked you; right? A. Correct. Q. Okay. And then you kept it in through 4/28 but it had grown maybe about 400-more thousand dollars; right? A. Correct. Q. Okay. And it was approximately 2.7."). The defendant could have moved to strike the testimony during Mr. Rodgers's direct examination. Instead, he elected to question Mr. Rodgers over and over about the size of his Uranium investment, in an apparent effort to characterize cryptocurrency as inherently risky. Having made this strategic choice, the defendant should not now be permitted to have that testimony stricken.

*Fourth*, granting the defendant's requested relief would be unfairly prejudicial to the Government at this stage. Striking Mr. Rodgers's testimony regarding the size of and motivations for his Uranium investment would unfairly and inaccurately suggest to the jury that the Government acted improperly in eliciting such testimony or that they should discredit Mr. Rodgers's testimony in its entirety. Leaving the jury with such an impression would be particularly unfair and confusing here, because the defendant both failed to object to the testimony and pursued it at length during cross-examination. Similarly, the curative instruction requested by the defendant would unfairly suggest that there was something improper in the Government's presentation of evidence. Of course, the defendant is free to argue in summation that evidence regarding Mr. Rodgers's Uranium investment is not relevant to the charges, if he so chooses.

*Fifth*, there has been no prejudice to the defendant warranting the relief he seeks. In his motion to strike, the defendant devotes only a single paragraph to prejudice. Mot. at 2-3. Most of that paragraph complains that the Government referred to the defendant's crime as a "heist" in its opening, even though (i) the defendant did not object to that use in the opening; (ii) the relief the defendant seeks has nothing to do with that reference; and (iii) most importantly, those are the defendant's own words: he is the one who called this crime a "crypto heist." GX 631A. As to his remaining arguments, it is hardly surprising that, in a case about a $50 million theft, jurors would understand that people lost significant amounts of money. And to the extent the defendant is concerned that jurors might decide the case based on sympathy to victims, the Government notes that (i) the core of the defense opening was about identity, making victim sympathy far less of a concern; and (ii) the Government has requested that the Court give it's standard charge about sympathy at the conclusion of the case. Tr. at 30 ("But what this case is going to boil down to is a very simple question, one that cannot be answered by spreadsheets or a blockchain diagram: Whose fingers were actually on the keyboard at the time that these transactions were executed in April of 2021?"); Dkt. 33 at 1 (requesting that the Court give its standard "sympathy" instruction).

For the foregoing reasons, the Court should deny the defendant's motion.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: /s/ ____________
Kevin Mead
William C. Kinder
Shaun E. Werbelow
Assistant United States Attorneys
(212) 637-2211/2439

cc: Counsel of Record (by ECF email)