OBERHEIDEN

ATTORNEYS

DR. NICK OBERHEIDEN

LYNETTE S. BYRD

P. COVARRUBIAS MEYER

ELLEN COMLEY

NICHOLAS JOHNSON

HON. BRIAN KUESTER

JONATHAN E. GOLDBERG

LINDA J. MCNAMARA

MICHELE RATCLIFFE

JOHN W. SELLERS

SHREY SHARMA

PAUL STRICKLAND

ALINA VENEZIANO

OF COUNSEL

HON. MIKE R. POMPEO

HON. TREY GOWDY

CONSULTANT

HON. KEVIN MCCARTHY

LOCAL COUNSEL

HON. S.A. MARSHALL

COREY STEINBERG

RICHARD T. SIMMONS

DAVID RABEN

ERICK CRUZ

MICHAEL A. RATAJ

BILL TUNKEY

KAMILLE DEAN

JOSEPH NASCIMENTO

Shrey Sharma
Direct Line: 516-851-7725
Shrey@federal-lawyer.com

September 29, 2026

**VIA EMAIL**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: *United States v. Jonathan Spalletta*, No. 26 Cr. 118 (JSR)**

Dear Judge Rakoff:

Pursuant to the Court's direction at trial on September 29, 2026 (Tr. 145), Defendant Jonathan Spalletta respectfully responds to the Government's letter of the same date ("Gov't Ltr.") concerning ten public communications attributed to Uranium Finance ("Uranium"): GX 201-4, 201-5, 201-6, 201-495, 201-497, 201-519, 201-522, 201-528, 201-662, and 206-14 (the "Uranium Posts").

The Government advances three theories of admissibility: (1) the seven posts Mr. Spalletta viewed are admissible for his state of mind; (2) the same seven posts are statements of "independent legal significance" on whether the damage in the Second Attack was authorized; and (3) portions of eight posts are requests, directives, questions, or statements of future intent. Gov't Ltr. at 1. The defense does not dispute that a post the Government shows Mr. Spalletta viewed may be admitted if it is relevant to his state of mind, with a limiting instruction, as the Court indicated. Tr. 141–42. But the second theory is a hearsay use under another name, and the third reaches only the actual requests, not the factual assertions surrounding them.

The defense therefore respectfully requests that the Court (a) reject the independent-legal-significance theory; (b) admit the viewed posts, if at all, only for Mr. Spalletta's state of mind, limited in number and with the redactions and limiting instruction set out below; (c) exclude GX 201-495 and 201-497 as cumulative or, at minimum, preclude any description of them as Uranium posts; (d) exclude the assertive portions of GX 201-4, 201-5, and 201-6, which Mr. Spalletta is not alleged to have viewed; and (e) require a proper foundation for GX 206-14 and exclude its compensation, airdrop, and "Recovered funds" passages under Rule 403.

## BACKGROUND

The Indictment alleges two sets of transactions: the "First Attack" on or about April 8, 2021, and the "Second Attack" on or about April 28, 2021. Indictment ¶¶ 5–11. It further alleges that, after the First Attack, Mr. Spalletta communicated with a Uranium representative and returned all but approximately $386,000, which the Government characterizes as a "sham 'bug bounty.'" *Id.* ¶¶ 1, 7–8. The Uranium Posts, in chronological order, are:

**GX 201-528** is a screenshot of an @UraniumFinance post dated April 8, 2021. It refers to "the exploiter," asks anyone with information to DM "@ meetbaymax" on Telegram, and states, "We would prefer to find a solution that does not require further escalating the matter."

**GX 201-522** is a composite of screenshots of posts 1/8 through 7/8 of an @UraniumFinance thread dated April 8, 2021. The posts state that the code "did not work as we intended," refer to "what happened" and "the exploit," state that the RADS pool was "directly affected," and announce that "all wallets that have made malicious transactions will be blacklisted."

**GX 201-519** is a screenshot of a post dated April 8, 2021: "Following to the hack, here is the hacker wallet (originally funded directly from Binance, so this is a hot wallet) : 0x36ad9ee78bfb730955993d2aa77ecccf95e3313e." The post tags @binance and @cz_binance and asks, "Can you have a look please ? RT please."

**GX 201-495 and 201-497** are screenshots of two photos attached to a post by a third-party X user, @kukai07191114. Each photo is a phone screenshot of pinned messages in a Telegram channel, overlaid on that user's partially visible Japanese-language commentary. The messages repeat the substance of GX 201-522.

**GX 201-662** is a screenshot of a post dated April 9, 2021: "We have reached an agreement with the original exploiter and have retrieve[d] a big portion of the stolen funds that had been taken from the exploit," and "$1,000,000 as been received."

**GX 206-14** is an Internet Archive capture, dated April 14, 2021, of a Medium post titled "Uranium V2 : launch, migration, audit." The post refers to "the exploit," announces the V2 renaming and a migration and compensation plan, states that "Audits were clearly a weakpoint for our v1," and includes a section titled "$1M Recovered funds."

**GX 201-4, 201-5, and 201-6** are cropped images of three posts dated April 28, 2021, with no URL, capture date, or identified source. They state that "Uranium migration has been exploited, the following address has 50m in it" (no address appears); urge readers to "report stolen funds with this address"; state, "We are in contact with Binance Security Team and in the process of escalating this"; and invite anyone with the funds to "contact me now to arrange a deal before this goes higher."

The Government represents that Mr. Spalletta viewed seven of the posts between April 8 and April 15, 2021. Gov't Ltr. at 2. It does not contend that he viewed GX 201-4, 201-5, or 201-6, which it describes as posted "immediately after the second exploit." *Id.* at 1–2, 5. None of the declarants is identified.

## ARGUMENT

### I. The Viewed Posts May Be Admitted Only for Mr. Spalletta's State of Mind, With a Limiting Instruction.

The Court has suggested that a post the Government shows Mr. Spalletta viewed might be admissible "towards his state of mind perhaps but not for the truth necessarily," and the Government agreed. Tr. 141. The Government's cited authorities rest on the same limitation: a statement offered to show that a listener was on notice is not hearsay precisely because, when so used, it is "not considered to prove the truth of the matter asserted." Gov't Ltr. at 2 (quoting *United States v. Moseley*, 980 F.3d 9, 27 (2d Cir. 2020)); *see United States v. Dupree*, 706 F.3d 131, 136–37 (2d Cir. 2013).

The defense does not dispute that principle. It asks only that the limitation be enforced through an instruction, given when any post is received and again in the final charge, along the following lines:

> You have heard evidence of certain social media and blog posts attributed to Uranium Finance. If you find that Mr. Spalletta viewed a post, you may consider the fact that he viewed it and the

> statements communicated to him only for the limited purpose of determining their effect, if any, on his state of mind. You may not consider any statement in a post as evidence that the statement itself is true. In particular, you may not consider the posts as evidence that any transaction was a "hack" or an "exploit," that any transaction was "malicious" or unauthorized, that any funds were "stolen," or that any wallet belonged to any person. Because each of these posts was made after the transactions on or about April 8, 2021, you may not consider any of them in determining what Mr. Spalletta knew or intended at the time of those transactions.

The final sentence of the proposed instruction acknowledges that every post the Government says Mr. Spalletta viewed was made after, and describes, the April 8 transactions. Gov't Ltr. at 2. In light of this timing, none of those posts could possibly show what he knew or intended when those transactions occurred. Indeed, the Government concedes a parallel point in footnote 4: it does not contend that the posts show the April 8 transactions were unauthorized, because statements made afterward cannot bear on that question. *Id.* at 5 n.4. The same reasoning applies to Mr. Spalletta's state of mind on April 8.

The Government also argues that the posts bear on Mr. Spalletta's state of mind when he later engaged in financial transactions. *Id.* at 3. If the posts are admitted for that purpose, the rest of the instruction applies: the jury may consider the posts only for what Mr. Spalletta saw and understood, not as proof of what they assert.

Moreover, the state-of-mind rationale supports admitting only enough to show notice. The seven viewed posts deliver substantially the same message, and each repetition of "hack," "exploit," "malicious," and "stolen" increases the risk that the jury will treat the posts as proof of what they assert. *See United States v. Reyes*, 18 F.3d 65, 70–71 (2d Cir. 1994). Under Rule 403, the Government should be limited to the minimum number of posts reasonably necessary to establish its asserted notice purpose, and should not be permitted to introduce cumulative posts merely to repeat Uranium's accusations that the conduct was a "hack," "exploit," "malicious," or involved "stolen" funds.

And, for any post admitted, the state-of-mind theory justifies admission of only the portions that could have informed Mr. Spalletta's understanding of whether the activity was permitted. Portions that do no notice work but carry significant prejudice should be redacted. The clearest example is the parenthetical in GX 201-519 stating that the wallet was "originally funded directly from Binance, so this is a hot wallet." That assertion says nothing about whether the activity was authorized. It invites an identification inference that the Government must prove, if at all, through tracing evidence and a qualified witness.

Several exhibits present additional issues.

*First*, GX 201-495 and 201-497 are not Uranium posts. The Government's letter describes them as "posted by Uranium on Twitter," Gov't Ltr. at 1, but the URLs on the exhibits show that they are photos attached to a post by a third-party user, @kukai07191114, depicting phone screenshots of pinned messages in a Telegram channel. Their content duplicates GX 201-522, which Mr. Spalletta viewed nine minutes later. *Id.* at 2. In addition, authentication of @kukai07191114's X post does not establish that the depicted Telegram messages were posted by Uranium; that requires a separate foundation. GX 201-495 and 201-497 should be excluded as cumulative under Rule 403. If they are admitted, the Government should not describe them to the jury as Uranium posts, and the partially visible Japanese-language commentary should be redacted or translated.

*Second*, the state-of-mind theory does not reach GX 201-4, 201-5, or 201-6, which the Government does not contend Mr. Spalletta viewed.

*Third*, GX 206-14 is a three-page blog post, most of which has no bearing on Mr. Spalletta's state of mind. It announces new token names and launch dates, walks through migration steps and tokenomics, describes an airdrop form, and sets out a compensation plan for users, including "those who paid the 4% fee in the last hours before the exploit" and "people who panic sold on April 9." It also presents the funds Mr. Spalletta returned under the heading "$1M Recovered funds." Those passages invite the jury to weigh the losses of unnamed users and to adopt Uranium's characterization of the returned funds as a "recovery," while adding nothing to what the

Government says the post shows about Mr. Spalletta's understanding. The Court should exclude the compensation, airdrop, and "Recovered funds" passages under Rule 403.

## II. The Government's "Independent Legal Significance" Theory Seeks a Hearsay Use Under Another Name.

The Government's second theory applies to the same seven exhibits as its first. *Compare* Gov't Ltr. at 1 ¶ 1, *with id.* ¶ 2. The only practical difference between the two theories is that the state-of-mind use carries a limiting instruction and the "independent legal significance" use does not. That difference is the poorly disguised point of the second theory: the Government seeks to induce the jury to use the contents of the posts to find that the damage in the Second Attack was "in fact" unauthorized, Tr. 144, which the jury can do only by accepting the truth of what the posts convey.

Indeed, the Government concedes that the posts "do not go so far as to explicitly state" any limit on users' authorization, although it argues that "they clearly imply" one. Gov't Ltr. at 4. That concession is telling. A statement has independent legal significance when it operates by itself as a directive to the person whose conduct is at issue, without regard to the truth of anything it asserts.

The posts here do not operate that way. They report a past event and ask Binance and the public for help; none tells users what they may or may not do. Whatever bearing they have on "authorization" comes straight from the inference that, because Uranium described the April 8 transactions as a "hack," it regarded similar activity as "unauthorized." In the Government's words, GX 201-519 "makes crystal clear Uranium's view that the first exploit was unauthorized." *Id.* at 2. Offering an out-of-court assertion, or the factual proposition necessarily conveyed by it, to prove that proposition's truth is an undeniable hearsay use. *See* Fed. R. Evid. 801(a), (c).

The Government's authorities and analogies confirm the point. As its own parentheticals describe them, each cited case involves a statement that itself grants or withholds rights between the declarant and the person whose conduct is at issue: a contract, a prior judgment, a homeowner telling an entrant "you're not allowed in," a property owner's statements authorizing the defendant to be on the property, a principal's grant of authority to an agent. Gov't Ltr. at 3–4 & n.3.

The posts here bear no resemblance. They convey public statements about a past event, addressed to Uranium's users and to Binance. As the Court observed, telling Joe not to enter one's house does not show that Sam, who never heard the conversation, lacked permission. Tr. 144. Here, GX 201-662 announces that Uranium "reached an agreement with the original exploiter." Treating that statement and other descriptions of past events as legally operative "rules" governing future conduct illustrates the flaw in the Government's theory: the posts report Uranium's characterization of what occurred rather than define the scope of "authorization." And, to the extent that the Government proves that Mr. Spalletta was the listener (or reader) of the posts, the Government's state-of-mind theory already applies. Tr. 141–42.

The timing underscores the problem with the Government's theory. Whereas the Government's homeowner analogy involves a statement of permission or prohibition communicated before or while the conduct occurs, the Uranium Posts instead characterize completed conduct after the fact. Calling the April 8 transactions a "hack" cannot retroactively withdraw authorization for those transactions, and that characterization does not itself establish the scope of authorization governing different transactions three weeks later. At most, if Mr. Spalletta saw the characterization, it bears on his state of mind, which is the nonhearsay use the defense already acknowledges.

Furthermore, the Government's contention that "[o]bjective indicators—like the Developer Posts—are instead what should determine whether damage was authorized," Gov't Ltr. at 4–5, is not an evidentiary argument. It is an argument about the meaning of "authorization" under 18 U.S.C. § 1030, which the defense disputes and which the Court need not resolve to decide whether the posts are hearsay. It also confirms the hearsay purpose:

the Government offers the posts in place of testimony from the developers about what was and was not authorized. *See id.* at 4.

Finally, the Government disclaims any use of the posts under this theory on whether the First Attack was authorized. *Id.* at 5 n.4. If the Court permits any use of the posts beyond Mr. Spalletta's state of mind, the jury should be instructed accordingly.

## III. The Government's Third Theory Reaches Only Actual Requests, Not the Assertions Around Them.

The Court observed that a request such as "Please get in touch with us" is not hearsay because "[i]t's not a statement of a fact, it's a request." Tr. 142; *see* Gov't Ltr. at 5 (citing *United States v. Kuthuru*, 665 F. App'x 34, 38 (2d Cir. 2016)). The defense does not dispute that principle. And, for the seven posts Mr. Spalletta actually viewed, this theory adds nothing to the state-of-mind use, which must be tempered by a limiting instruction.

The Government's third theory, therefore, matters only as to GX 201-4, 201-5, and 201-6, and for the Government's attempt to use Rule 803(3) to prove the truth of what the posts assert. On both points it falls short.

According to the Government, GX 201-4, 201-5, and 201-6 were posted "immediately after the second exploit." Gov't Ltr. at 5. They do contain some requests, which are not hearsay. Those requests, however, are packaged with inadmissible factual assertions.

For example, the first sentence of GX 201-4, "Uranium migration has been exploited, the following address has 50m in it," is pure assertion, as the Government effectively acknowledges. *Id.* at 6 n.5. GX 201-5 asks readers to "report stolen funds," thereby asserting that the funds were "stolen." The Government does not even suggest what fact of consequence this request tends to prove. Its only potential relevance is the implied assertion that the Second Attack was a theft.

The Government's fallback, that any inadmissible portion "should be admitted for context with a limiting instruction," *id.*, is the use the Second Circuit has cautioned against where the purported context has little relevance apart from the truth of the statement. *See Reyes*, 18 F.3d at 70–71. That is the case here.

The assertive portions of GX 201-4 and 201-5, therefore, should be excluded.

The Government also contends that some of these exhibits are admissible under Rule 803(3) as Uranium's statements of its own plans. The Government's reliance on the state-of-mind exception is misplaced in two respects.

First, "We are in contact with Binance Security Team" (GX 201-6) describes an asserted external fact, not the declarant's state of mind. And, although the statement that it was "in the process of escalating this" may have conveyed an intention to take further action, Rule 803(3) would permit, at most, use of that statement to prove the declarant's future plan; it would not make admissible the embedded factual assertion that Uranium was already "in contact with Binance Security Team."

Second, the Government's argument about the blacklisting statement in GX 201-522 overreaches. Although the statements "[a]ny wallet asking for V2 swap will be checked" and "will be blacklisted" may have expressed a plan, the embedded phrase "wallets that have made malicious transactions" is a backward-looking characterization of past events, which Rule 803(3) excludes as "a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3); *see Shepard v. United States*, 290 U.S. 96, 105–06 (1933). The Government's contention that the statement "is plainly relevant to [the] question of whether the exploits were authorized," Gov't Ltr. at 6, reveals that the Government intends to use that characterization for its truth.

The forward-looking portion of the statement fares no better. Its only relevance would be as evidence of Uranium's own view of what users were permitted to do, yet the Government itself argues that "the subjective

and uncommunicated understanding of the developers" is "not what should necessarily determine the authorization question." Gov't Ltr. at 4.

Regarding GX 201-519 and 201-528, the Government's "request" theory covers only a small part of each post: "Can you have a look please ? RT please" (GX 201-519) and the request to DM "@ meetbaymax" on Telegram (GX 201-528). The rest of each post is assertion, pure and simple. GX 201-519 declares, "Following to the hack, here is the hacker wallet (originally funded directly from Binance, so this is a hot wallet)," and GX 201-528 refers to "the exploiter."

Because the Government contends that Mr. Spalletta viewed both posts, Gov't Ltr. at 2, its "request" theory adds nothing to the analysis. Calling part of a post a "request" does not make the rest of it admissible for its truth. If GX 201-519 and 201-528 are admitted, they should come in only for Mr. Spalletta's state of mind, subject to the limits set out in Point I. The jury should be instructed that it may not treat "the hack," "the hacker wallet," or "the exploiter" as evidence that any transaction was a hack or that any wallet belonged to any person. The parenthetical in GX 201-519 describing the wallet as "originally funded directly from Binance" should be redacted. The "request" theory cannot serve as a route around those limits.

## IV. The Government Has Not Laid a Foundation for GX 201-4, 201-5, 201-6, or 206-14.

Separate and apart from the hearsay issues discussed above, several of the proffered exhibits face authentication problems. The Government proposes to authenticate the posts through its paralegal, who, it says, can do so "by simply going to Twitter and seeing them." Tr. 141. That method depends on the exhibit identifying the post the paralegal is to find and compare. It may work for exhibits such as GX 201-519, which display the post's URL. It does not work for GX 201-4, 201-5, and 201-6. Those exhibits are cropped images that show only an account name, handle, date, and text. They display no URL and no capture date, the Government has not said where they came from, and its letter reproduces them in the same cropped form. Gov't Ltr. at 5–6. Nothing in the images allows the paralegal to determine whether they were taken from X itself, a news article, another user's repost, or some other compilation.

GX 201-4 also refers to "the following address" without displaying one, which suggests the image may not reproduce the full post. What remains is the appearance of the name "Uranium Finance" and the handle "@UraniumFinance," and that alone does not establish that Uranium authored the posts. *See United States v. Vayner*, 769 F.3d 125, 131–33 (2d Cir. 2014).

Before these exhibits are offered, the Government should identify their source and show that they accurately reproduce posts made by the @UraniumFinance account.

As to GX 206-14, the Government has said it will authenticate Medium posts "via the Wayback Machine" through its paralegal. Tr. 141. In *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018), the Government authenticated Wayback Machine screenshots through an Internet Archive employee who explained how the Archive captures and preserves web content and confirmed that the screenshots matched the Archive's records. A paralegal who retrieved the capture cannot supply that foundation.

And, because GX 206-14 is offered to show what Mr. Spalletta read when he viewed the post on April 15, 2021, Gov't Ltr. at 2, the Government must also establish that the April 14 capture reflects the post as it appeared when he viewed it.

## CONCLUSION

For these reasons, the defense respectfully requests that the Court: (1) reject the Government's independent-legal-significance theory; (2) limit the Government to the minimum number of the viewed posts (GX 201-519, 201-522, 201-528, 201-662, and 206-14) reasonably necessary to establish its asserted state-of-mind purpose, exclude cumulative iterations, redact the parenthetical in GX 201-519, and give the limiting instruction set out in Point I; (3) exclude GX 201-495 and 201-497 as cumulative or, if they are admitted, preclude any

description of them as Uranium posts and require a separate foundation for the depicted Telegram messages; (4) exclude the assertive portions of GX 201-4, 201-5, and 201-6, including the first sentence of GX 201-4; (5) require the Government to identify and authenticate the source of GX 201-4, 201-5, and 201-6 before they are offered; and (6) require the Government to establish a sufficient foundation that GX 206-14 accurately reflects the Medium page as it existed on April 14–15, 2021, rather than merely establishing that the paralegal retrieved the exhibit from the Internet Archive recently, and exclude the compensation, airdrop, and "Recovered funds" passages of that exhibit under Rule 403.

Respectfully submitted,

/s/ Shrey Sharma
Shrey Sharma
OBERHEIDEN P.C.
30 Wall Street, 8th Floor
New York, New York 10005
(516) 851-7725
shrey@federal-lawyer.com
*Counsel for Defendant Jonathan Spalletta*

cc: All counsel of record (by email)